Coeur D'Alene Athletic Round Table, Inc. v. Commissioner.
Coeur D'Alene Athletic Round Table, Inc. v. Commissioner
Docket No. 83679.
United States Tax Court
T.C. Memo 1962-268; 1962 Tax Ct. Memo LEXIS 42; 21 T.C.M. (CCH) 1430; T.C.M. (RIA) 62268; November 16, 1962
Francis J. Butler, Esq., for the petitioner. Leo K. O'Brien, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined deficiencies in the petitioner's income and excess profits taxes, as follows: Year
Amount
1951
$36,917.60
1952
15,109.79
1953
16,706.36
The only issue for decision is whether, during the years in issue, the petitioner was an organization exempt from tax under section 101(9) of the Internal Revenue Code of 1939. Findings of Fact Some of the facts are stipulated and are found as stipulated. The petitioner is a corporation organized under the laws of the State of Idaho. It filed no income or excess profits tax returns for the years in issue. However, it did file information returns for each of those years with *43 the district director of internal revenue for the District of Idaho. The petitioner was originally incorporated in the 1930's as an affiliate of the Kootenai Post No. 14 of the American Legion, Coeur d'Alene, Idaho, under the name "Legion Athletic Club of Coeur D'Alene, Inc." Article IV of its Articles of Incorporation filed with the Idaho Secretary of State's office, Boise, Idaho, on March 31, 1931, provided as follows: PURPOSE: The purpose of this association shall be to promote and engage in sport, amusement, social and like activities and all incidents thereto; to conduct, hold, and give boxing, sparring, wrestling, and like exhibitions; to possess all powers granted by statute to an Idaho corporation; to transact commercial business in connection with any or all of the foregoing; to devote any and all net proceeds therefrom to charitable, social, civic, and, or, fraternal uses, particularly in connection with the activities of Kootenai Post No. 14 of the American Legion, Coeur d'Alene, Idaho. On June 11, 1942, a "CERTIFICATE OF AMENDMENTS" to the Articles of Incorporation was filed, Article VI of which provided: CHARACTER OF CORPORATION: This corporation shall be and remain *44 a cooperative association wherein pecuniary profit is not the object of the associates or corporation, and is organized and shall exist under the provisions of Idaho Code Annotated (1932) §§ 29-1001 to 29-1005, both inclusive, and correlated provisions of the laws of the State of Idaho; no part of the net earnings of the association to inure to the benefit of any member or members, but to be devoted exclusively to the purposes of said association and to charitable, fraternal, patriotic, civic, benevolent and athletic purposes; and upon dissolution the assets to be distributed to the Kootenai Post of the American Legion, if extant, for similar purposes. The amendments also changed the name of the corporation to "Legion Athletic Round Table Club, Inc." In 1945 the petitioner severed its connection with the American Legion and changed its name to "Coeur d'Alene Athletic Round Table, Inc." At the same time it amended Articles IV, VI and VIII of its Articles of Incorporation to read as follows: IV. PURPOSES: That the purposes for which said corporation is formed are as follows: To promote and engage in sports and amusements; to conduct, hold and give boxing, sparring, wrestling *45 and like exhibitions. To promote, hold and arrange basketball, football and baseball matches and competitions and other out-of-door sports; and to offer, grant or contribute toward the provision of prizes, awards and distinctions. To provide athletic grounds and stands. To further and promote the general civic and business interest of the City of Coeur d'Alene. To conduct a club for the social enjoyment of the members. To provide meals, refreshments, games, devices and other conveniences in connection with the club-rooms. To buy, sell, own, lease and improve real estate which may be required or deemed necessary for the purposes of carrying on any of the objects of the corporation. To contract debts, issue bills, notes, mortgages, bonds and debentures deemed necessary for the purpose of carrying on the objects of this corporation. To devote any and all net proceeds received by said corporation to charitable, social, civic, fraternal, patriotic, benevolent or athletic uses and purposes. * * *
VI. This corporation shall be and remain a cooperative association wherein pecuniary profit is not the object of the members of the corporation; and is organized and shall exist *46 under the provisions of Idaho Code Annotated, Section 29-1001 to 29-1005, both inclusive; no part of the earnings of this corporation shall inure to the benefit of any member or members but shall be devoted exclusively to purposes of said corporation and to charitable, fraternal, patriotic, civic, benevolent and athletic purposes. * * *
VIII. MEMBERSHIP: The By-Laws of this corporation shall provide the number and qualifications of members and the terms and conditions of admission to membership. The rights and interests of all members shall be equal and no member can have or acquire a greater interest than any other member. No member can have or acquire any right, title, or interest in any of the earnings or accumulations of the corporation or its property. In the event of dissolution of this corporation any property remaining after the payment of debts and cost of dissolution shall be donated to a charitable use by the directors. On June 28, 1945, the Commissioner, pursuant to the petitioner's request for a ruling with regard to its exempt status, informed the petitioner by letter as follows: It is the opinion of this office, based upon the evidence presented, that *47 you are exempt from Federal income tax under the provisions of section 101(9) of the Internal Revenue Code and corresponding provisions of prior revenue acts. * * *
Thereafter the petitioner made certain amendments to its charter and sent these amendments to the Commissioner for a ruling concerning their effect on its exempt status. The Commissioner replied in a letter dated November 7, 1946, which contained the following: Inasmuch as there appears to be no changes in your organization or method of operation, this ruling [the letter ruling of June 28, 1945, referred to above] is still applicable under your present name and amended sections of your articles of incorporation. * * *
During the years in issue the petitioner maintained club rooms in leased space in the Desert Hotel in Coeur d'Alene. In these club rooms the petitioner operated a bar for the sale of alcoholic beverages to members and guests. Several rooms were used as dining rooms in which members and their guests could purchase meals. In addition, one room contained a number of slot machines, which were legal during the years in question. Finally, the club frequently provided entertainment *48 for its members and guests similar to that ordinarily provided in night clubs. The petitioner, on occasion, would conduct at its club rooms special events for its members and their guests, such as stag dinners, drawings for which prizes were awarded, and bingo games. The petitioner occasionally sponsored sporting events and exhibitions to which the public was invited and for which those who attended were charged admission fees. These events were sponsored as a public service to the people of Coeur d'Alene, and the petitioner consistently sustained losses on the operation of these events. During the years in question, the petitioner served meals at its club rooms to certain civic luncheon clubs. It was paid for these meals. Although some of the members of these clubs were members of the petitioner, some were not. The petitioner agreed to provide such service to these luncheon clubs at their request because no other place was available on a year-round basis where such clubs could hold their luncheon meetings. The petitioner consistently lost money on these luncheons. Also, during these same years the petitioner participated in the operation of the State Line Athletic Round Table. *49 This was an entertainment spot in Idaho near the Washington-Idaho line at which alcoholic beverages were sold and slot machines maintained. Together, petitioner and the Spokane Athletic Round Table operated the State Line Athletic Round Table which was open to members of both clubs. It was established in 1946 because the Spokane Athletic Round Table believed that it would not be able to continue the use of slot machines in its Spokane club. The petitioner was asked to participate in the State Line club operation so there would be an organization involved which would qualify for a liquor license under the laws of the State of Idaho. The revenue produced by the operation of the State Line Athletic Round Table was divided between petitioner and the Spokane club. The petitioner's share was the receipts from the sale of alcoholic beverages and 15 percent of the revenue from the slot machines. The petitioner was, during the taxable years involved, a membership club. During 1951 it had 3,886 members. It had 4,581 members and 5,508 members during 1952 and 1953, respectively. The city of Coeur d'Alene has a population of approximately 12,000 people. To become a member of the petitioner, it *50 was necessary to make application in writing. Before an application was accepted, a report on the applicant was obtained from the credit bureau whenever possible. The manager of the petitioner was authorized by the board of directors to pass upon applications for membership and to accept applicants as members. Membership dues during the taxable years involved were $3 per year. A member was entitled to a card for his wife which would authorize her to use the facilities of the club. The policies of the petitioner were established by its board of directors, which was elected annually. All club members were entitled to attend the annual meeting and vote for directors. Notice of the meeting was sent to each member. In order to obtain access to the petitioner's facilities in Coeur d'Alene it was necessary to be a member of the petitioner, be a guest accompanying a member or have a properly issued guest card. During the years in issue there was, in use, only one entrance to the petitioner's club rooms. This entrance was electronically operated and could be opened by pressing a button in the cashier's cage, which was adjacent to the door. A window between the cashier's cage and the entryway *51 outside of this door allowed a person in the cashier's cage to see anyone seeking admittance. A sign outside of this door stated "Please present your [appropriate year] membership card." During the evening a doorman was on duty to determine whether persons seeking admission were members or authorized guests. During the day when there was less business this duty was performed by the bartender. All of the petitioner's employees were instructed to admit only members, guests accompanying members or persons with authorized guest cards. The use of the State Line Athletic Round Table facilities was restricted to members of the Spokane and Coeur d'Alene Athletic Round Tables and guests accompanying members. The Spokane organization hired a doorman to check membership cards of those seeking admittance. Guest cards were not accepted. The petitioner had guest cards available for members who wished to have guests use the Coeur d'Alene club facilities but who were unable to accompany them. These cards had blanks for the date, the name of the guest and the name of the member sponsoring the guest. Guest cards were valid for only a short period of time after they were issued. During the years *52 in issue three motels and the Desert Hotel had guest cards to the petitioner. There were between 40 and 50 motels in Coeur d'Alene during these years. The managers of the three motels which had guest cards and the manager of the Desert Hotel were members of the petitioner. They were given guest cards for the use of personal friends and old and regular patrons whom they would wish to sponsor as guests at the petitioner's club rooms. They were instructed to give these cards very discreetly. Relatively few guest cards were distributed by these motel operators or by the manager of the Desert Hotel. On some occasions members of the petitioner who were also members of other organizations which were holding conventions in Coeur d'Alene would request that certain dignitaries of the convention be granted guest privileges and be allowed to use the petitioner's facilities. These requests were usually granted and guest cards were issued to the dignitaries involved for their use during the convention. The manager of the petitioner's club rooms would inform members of events to be held at the club through a monthly notice mailed to each member. In order to induce the members to make use of the *53 facilities of the club, petitioner's manager would frequently insert notices in the local newspaper similar in form to commercial advertisements for restaurants and night clubs. Many of these notices were headed by the word "Members." In some notices, however, this word was omitted and there was no reference to the fact that membership was required for admission. In addition, the petitioner purchased "advertisements" in the telephone book, the city directory and a magazine published for the purpose of indicating the points of interest and the facilities available in Coeur d'Alene. None of these notices referred to the fact that the petitioner was a membership club. The "advertisements" in the city directory and the magazine were inserted by petitioner because it felt these publications would benefit the city generally and it wished to help the publishers in defraying publication costs, which were dependent for payment on revenue received from advertising space sold. The "advertisements" in the telephone directory were taken so that the petitioner's phone number would be readily accessible to members desiring to call. Reference to the fact that the petitioner's facilities were available *54 only to members and their guests was omitted through inadvertence and because the petitioner was generally known as a membership club to the residents of Coeur d'Alene. One commercial club in the Coeur d'Alene area which offered to the public services similar to those petitioner offered its members purchased an advertisement in the Coeur d'Alene telephone directory which included the words "No cover - No minimum - No membership." The petitioner had large amounts of income [1] during the years in issue. Approximately 2 percent of its income was derived from transactions with nonmembers. Large amounts of this income were used for civic or charitable purposes, [2] some for improvements to club facilities, and some of it was held and invested in securities in a later taxable year. No part of the petitioner's net earnings inured to the benefit of any private shareholder. *55 The respondent determined that the petitioner was not an organization exempt from tax during 1951, 1952 and 1953 and, therefore, asserted that it was subject to income and excess profits taxes for those years. The petitioner, during the taxable years involved, did not seek to obtain nor did it obtain any income from nonmembers that was not incidental to its purposes of providing recreation and pleasure for its members or its purpose of providing service to the community, a nonprofitable purpose. Opinion The petitioner contends that it was, during the taxable years, an organization exempt from tax under the provisions of section 101(9) [3] of the Internal Revenue Code of 1939. The respondent, on the other hand, contends that the petitioner is not entitled to an exemption for those years because it derived substantial profits from transactions with the general public. *56 In order to qualify as an exempt corporation, the petitioner must show that it was organized and operated in substantial compliance with the provisions of the Internal Revenue Code under which it claims to be exempt. American Automobile Association, 19 T.C. 1146 (1953). Thus, if the petitioner has sought to profit from the sale of its services to the general public, it would not be entitled to an exemption under section 101(9). However, the mere fact that the petitioner has obtained funds from its members through the sale of its goods and services rather than through dues and assessments would not destroy its exempt status. Cf. Rev. Rul. 44, 1953-1 C.B. 109. Nor would the petitioner lose its exempt status if it derived income from the general public if the income is derived from an activity incidental to its primary purpose. Anderson Country Club, 2 T.C. 1238 (1943). The income of a club from bona fide guests of members is incidental in nature, and this may be true even though the guests are admitted on displaying a guest card when they are not in the company of their sponsor. Aviation Club of Utah, 7 T.C. 377 (1946), affd. *57 162 F. 2d 984 (C.A. 10, 1947), certiorari denied 332 U.S. 837 (1947). Further, the fact that the club uses income derived from members for charitable purposes rather than for the operation of the club does not result in loss of qualification. Aviation Country Club, Inc., 21 T.C. 807 (1954). Funds raised from members and incidental income which are used to improve the club facilities are not considered as benefiting the members to the extent that they inure to the benefit of private shareholders. Anderson Country Club, supra. We have found that the petitioner neither sought nor admitted the public generally to its facilities. Many of the notices which were placed in local publications have the appearance of advertisements soliciting patronage from the public. However, Coeur d'Alene is a small city and the petitioner has a large number of members there. Thus, the use of advertising media to stimulate members to use the club facilities would not be an unreasonable procedure. Further, the fact that one commercial restaurant and night club in the Coeur d'Alene area advertised that no membership was required to use its facilities indicates *58 that advertisements by private clubs were not considered unusual in the Coeur d'Alene area. Finally, the great weight of the evidence in the record before us indicates that reasonable precautions were taken to exclude nonmembers and that guest cards were given only to bona fide guests and not distributed indiscriminately. For these reasons, we find that the major portion of the petitioner's income was derived from its members and the remainder was from sources incidental to its exempt purposes. Therefore, the petitioner has shown itself to be exempt from tax under the provisions of section 101(9) of the Internal Revenue Code of 1939 during the years in issue. Decision will be entered for the petitioner. Footnotes
1. The petitioner had net earnings before donations in the years in issue, as follows: 1951, $62,071.09; 1952, $41,963.61; and 1953, $44,784.80. ↩
2. The petitioner expended the following sums for charitable and civic purposes during the years at issue: 1951, $57,481.09; 1952, $34,271.44; and 1953, $33,869.02.↩
3. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this chapter - * * *
(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder; * * *↩